UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILLIAM HUDSON,** | **CIVIL ACTION** |
|     **Plaintiff** | |
| **VERSUS** | **NO. 15-836** |
| **SEISCO INTERNATIONAL LIMITED,** | **SECTION "E" (3)** |
|     **Defendant** | |

## ORDER AND REASONS

Before the Court is Defendant's Motion for Partial Summary Judgment.[1]

On February 13, 2015, Plaintiff William Hudson ("Hudson") filed this suit in the 24th Judicial District Court in Jefferson Parish, Louisiana, against his former employer, Defendant SEISCO International Limited ("SEISCO").[2] Hudson alleges that from 2010 to 2014, he was employed as SEISCO's vice president and national sales manager.[3] Hudson contends SEISCO "unilaterally and without notice reduced Hudson's salary" on February 1, 2014, and terminated his employment on June 13, 2014, in violation of his employment agreement with SEISCO.[4] Hudson seeks damages for unpaid wages and breach of contract.[5] SEISCO removed the case to this Court on March 18, 2015.[6]

SEISCO, a Texas corporation,[7] filed this motion for partial summary judgment on July 2, 2015.[8] In its motion, SEISCO argues Texas law, and not Louisiana law, should apply to this case.[9] Hudson filed his response in opposition to SEISCO's motion on July 21, 2015, arguing SEISCO has not proven there is a conflict between Louisiana and Texas

---

[1] R. Doc. 13.
[2] R. Doc. 1-1.
[3] R. Doc. 1-1 at 1.
[4] R. Doc. 1-1 at 2–3.
[5] R. Doc. 1-1 at 4.
[6] R. Doc. 1. SEISCO filed an amended notice of removal on March 24, 2015. R. Doc. 6.
[7] *See* R. Doc. 24 at ¶ 2; R. Doc. 26 at ¶ 2.
[8] R. Doc. 13.
[9] *Id.*

law and, alternatively, that Louisiana has more contacts with the parties and contract at issue.[10] SEISCO filed a reply memorandum in support of its motion on September 17, 2015.[11]

## STANDARD OF LAW

Summary judgment is proper if the movant shows there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law.[12] A genuine issue of material fact exists if, based on the evidence, a reasonable jury could return a verdict for the non-movant.[13] "The pleadings, depositions, admissions, and answers to interrogatories, together with affidavits, must demonstrate that no genuine issue of material fact remains."[14] Courts in this circuit have held, however, that factual determinations that are antecedent to the choice-of-law determination "may properly be determined by the district court after considering the affidavits, depositions, and other matters submitted by the parties."[15] The Court views all evidence in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-movant.[16]

## ANALYSIS

When a court has diversity jurisdiction over a case, it must apply the choice-of-law rules of the forum state in which the court sits.[17] Because the forum state in this case is Louisiana, Louisiana's choice-of-law rules apply.[18]

---

[10] R. Doc. 16.
[11] R. Doc. 25.
[12] FED. R. CIV. P. 56(a).
[13] *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014).
[14] *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 383 (5th Cir. 1996) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 323 (1986)).
[15] *Southern Serv. Corp. v. Tidy Bldg. Servs., Inc.*, 2004 WL 2784909, at *4 (E.D. La. Dec. 1, 2004) (internal quotation marks omitted) (citing *Nunez v. Hunter Fan Co.*, 920 F. Supp. 716, 718 (S.D. Tex. 1996)).
[16] *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 391 (5th Cir. 2009).
[17] *Pioneer Exploration*, 767 F.3d at 512.
[18] *See id.*

Louisiana Civil Code Article 3515 provides the residual choice-of-law rule: "[A]n issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue."[19] A court determines that state by "evaluating the strength and pertinence of the relevant policies of all involved states in light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state."[20]

Louisiana Civil Code Article 3537 provides the general choice-of-law rule applicable to contracts:

> [The state that would be most seriously impaired if its laws were not applied] is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.[21]

The comments to Article 3537 instruct the Court to apply Article 3537 in conjunction with Article 3515.[22] "[T]he objective is to identify the state whose policies would be most seriously impaired, that is, the state that, in light of its connection to the parties and the transaction and its interests implicated in the conflict, would bear the most serious legal,

---

[19] LA. CIV. CODE art. 3515.
[20] *Id.*
[21] LA. CIV. CODE art. 3537.
[22] LA. CIV. CODE art. 3537 cmt. c.

social, economic, and other consequences if its law were not applied to the issue at hand."[23]

If the laws of the states do not conflict, however, no choice-of-law analysis is necessary, and the Court must "simply apply the law of the forum state."[24]  The Court will consider the controlling and determinative issues in this matter to determine whether the laws of Texas and Louisiana conflict with respect to the causes of action asserted.[25] When a conflict of laws exists with regard to more than one issue, the Court must analyze each issue separately, "since each may implicate different states, or may bring into play different policies from these states."[26] Dépeçage, however, "should not be pursued for its own sake."[27] "The unnecessary splitting of the case should be avoided, especially when it results in distorting the policies of the involved states."[28]

Hudson seeks damages for unpaid wages under Louisiana Revised Statute § 23:632 and breach of contract under Louisiana Civil Code article 2749.[29]  Although Hudson seeks relief under Louisiana law, the decision has not yet been made as to which state's laws will apply, as the contract does not include a provision dictating the applicable law. Federal Rule of Civil Procedure 8(a) imposes a notice pleading standard and requires plaintiffs to "'give the defendant fair notice of what the plaintiff's claim is and the grounds

---

[23] *Id.* (internal quotation marks omitted).

[24] *Mumblow v. Monroe Broadcasting, Inc.*, 401 F.3d 616, 620 (5th Cir. 2005).

[25] *See id.* (comparing New York and Louisiana contract laws with regard to "the controlling issue in this matter"); *Rainbow USA, Inc. v. Nutmeg Ins. Co.*, 612 F. Supp. 2d 716, 727 (E.D. La. 2009) (applying Louisiana law after concluding that the laws of New York and Louisiana were "substantially similar with respect to the determinative issues in this case" and "any minor differences between the laws will have no measurable effect on the outcome").

[26] LA. CIV. CODE art. 3515 cmt. d.

[27] *Id.*

[28] *Id.*

[29] R. Doc. 1-1 at 4.

upon which it rests.'"[30] So long as the plaintiff has given the defendant fair notice of the nature of the claims, the Court may apply the conflict-of-law rules of the forum to determine the laws under which the claims will be judged. In this case, Hudson's petition for damages satisfies this notice pleading requirement and puts SEISCO on fair notice that Hudson is making claims for unpaid wages and breach of employment contract. Accordingly, the Court will analyze the underlying allegations of his claims, irrespective of whether Louisiana law or Texas law applies, to determine which state has the greater interest in this matter.

First, the Court must determine whether a conflict exists with respect to the laws applicable to these causes of action in Texas and Louisiana. Under Louisiana law, a claimant may sue his or her employer to recover any unpaid wages pursuant to Louisiana Revised Statute § 23:631.[31] The claimant may recover penalty wages if the court determines the employer's failure to pay wages was not in good faith.[32] The claimant may also recover attorney's fees.[33] Under Texas law, a claimant may seek recovery of unpaid wages from an employer either by filing a claim with the Texas Workforce Commission ("Commission") or by filing suit in a court of law asserting common-law claims.[34] To proceed before the Commission, the claimant must first file a wage claim with the Commission within 180 days of the date the wages were due for payment.[35] Under that scenario, the claimant may bring a suit in court only to appeal a final order from the

---

[30] *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 438 (5th Cir. 2004) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 507 (2002)).
[31] LA. REV. STAT. § 23:631.
[32] LA. REV. STAT. § 23:632.
[33] *See* LA. REV. STAT. § 23:632(c).
[34] *See Aguirre v. Trevino*, No. 2:14-CV-423, 2015 WL 3770638, at *3 (S.D. Tex. Jan. 14, 2015) *report and recommendation adopted as modified*, No. 2:14-CV-423, 2015 WL 3882453 (S.D. Tex. June 17, 2015).
[35] *See* TEX. LABOR CODE §§ 61.001, 61.051.

Commission.[36] The Commission may impose a penalty against the employer if it determines the employer acted in bad faith in not paying wages.[37] Unlike Louisiana law, however, Texas law does not allow the claimant to seek attorney's fees through his unpaid wages claim.[38]

If a claimant files suit in court under a breach of contract theory, Texas law allows a prevailing claimant to recover attorney's fees on a breach of contract claim even if the contract does not provide for the recovery of attorney's fees by the prevailing party.[39] Louisiana law does not permit recovery of attorney's fees through a breach of contract claim unless the contract provides for attorney's fees.[40]

Therefore, there are differences between the laws of Texas and the laws of Louisiana as to both causes of action, and the Court must undergo Louisiana's choice-of-law analysis.[41] Hudson's claims for both unpaid wages and breach of contract are based upon Hudson's employment agreement with SEISCO. Both Texas's and Louisiana's interests and contacts with regard to each issue turn largely on the particular state relationship to the parties and the underlying employment contract, and thus the choice-

---

[36] TEX. LABOR CODE § 61.062.

[37] TEX. LABOR CODE § 61.053.

[38] *See* TEX. LABOR CODE §§ 61.051–61.067; *Stewart Automotive Research, LLC v. Nolte*, 465 S.W.3d 307, 309–12 (Tex. App. 2015) (noting that "attorneys' fees are not available to the prevailing party in the absence of an authorizing contract or statute" and concluding attorney's fees for unpaid wages claim were not authorized by statute, including TEX. LABOR CODE § 61.066(f)); *Attorney Fees*, 27 BUS. TORTS REP. 211 (2015).

[39] *See* TEX. CIV. PRAC. & REM. CODE § 38.001(8).

[40] *See Stutts v. Melton*, 130 So.3d 808, 814 (La. 2013) ("Louisiana courts have long held that attorney fees are not allowed except where authorized by statute or contract."); *Hollenshead Oil & Gas, LLC v. Gemini Explorations, Inc.*, 44 So.3d 809, 817 (La. App. 2 Cir. 2010) ("Attorney fees are not allowable in an action for breach of contract unless there is a specific provision therefor in the contract." (citing *Maloney v. Oak Builders, Inc.*, 235 So.2d 386, 390 (La. 1970))).

[41] *See Deep Marine Technology, Inc. v. Conmaco/Rector, L.P.*, 515 F. Supp. 2d 760, 769 (S.D. Tex. 2007) ("While Texas allows recovery of attorney's fees to a prevailing party on a breach of contract claim, Louisiana law does not permit recovery of fees unless provided by contract. . . . Thus, a choice of law determination is necessary when, as here, the relevant jurisdictions conflict regarding the availability of attorney's fees in a breach of contract action.").

of-law analysis for both issues is the same.[42] Accordingly, the interests of Texas and Louisiana with respect to both issues are substantially the same, and the Court will engage in only one choice-of-law analysis for both issues.

The Court considers several factors in making a choice-of-law determination, including the relationship of each state to the parties and the transaction, the location of the object of the contract, the nature and purpose of the contract, each state's interest in the matter, the justified expectations of the parties, the location of the domicile, residence, or business of the parties, and the interest of facilitating "orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other."[43]

Both Louisiana and Texas have an interest in the issues in this case. Louisiana has a significant and compelling interest in ensuring the prompt payment of Hudson's wages, as "prompt payment of wages to employees protects the public interest."[44] Texas, on the

---

[42] *See, e.g., Berard v. L-3 Commc'ns Vertex Aerospace, LLC*, 35 So. 3d 334, 343 (La. App. 1 Cir. 2010) (noting that relevant factors to the choice-of-law analysis of claims brought under the Louisiana Wage Payment Act include the parties' domiciles, the employment contract, the nature of the work, and the place the employment was initiated); *Mendonca v. Tidewater, Inc.*, 862 So. 2d 505, 510–11 (La. App. 4 Cir. 2003) (considering the underlying contract, citizenship of the parties, the location of employment in making a choice-of-law determination with regard to the plaintiff's breach-of-contract claims).

[43] LA. CIV. CODE art. 3537. *See also* LA. CIV. CODE art. 3515; *Petticrew v. ABB Lummus Global, Inc.*, 53 F. Supp. 2d 864, 867 (E.D. La. 1999); *Muirfield (Delaware), L.P. v. Pitts, Inc.*, 17 F. Supp. 2d 600, 606 (W.D. La. 1998) (considering the interests of each potentially interested state, including their interest in performance of the contract and the citizenship of the relevant parties to determine which state's substantive law should apply); *Tolliver v. Naor*, No. 99-0586, 2002 WL 272377, at *4 (E.D. La. Feb. 25, 2002).

[44] *Brister v. Schlinger Found.*, No. 04-3247, 2005 WL 2036733, at *5 (E.D. La. July 28, 2005); *Berard*, 35 So. 3d at 342.

other hand, has a legitimate interest "in regulating the businesses that are organized under its laws"[45] and ensuring the legal rights of Texas companies are protected.[46]

SEISCO is a Texas corporation with its principal place of business in Texas.[47] SEISCO manufactures its products in Texas and Mexico.[48] Hudson testified that SEISCO has no offices in Louisiana and no component of SEISCO's business is located in Louisiana except for Hudson himself.[49] Hudson resides in Louisiana[50] and paid Louisiana income taxes during the relevant time period in this case.[51] Although all of Hudson's work was done "out of [his] house [in Louisiana],"[52] he had to travel to Texas for meetings on several occasions.[53] He also testified that he was a national sales manager, traveling out of state "extensively."[54] There is, however, conflicting evidence on the record as to whether Texas was part of Hudson's sales territory,[55] although the parties agree Louisiana was part of his sales territory.[56]

"[T]he policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state"[57] weigh in favor of applying Texas law. Because SEISCO is a Texas

---

[45] *Brister*, 2005 WL 2036733, at *5. *See also Liberty Mut. Ins. Co. v. Transit Mix Concrete & Materials Co.*, No. 06-12-00117-CV, 2013 WL 3329026, at *7 (Tex. App. June 28, 2013), *review denied* (Oct. 18, 2013) ("While Texas has an interest in protecting foreign corporations with places of business in Texas, such an interest may not be as intense as the desire to provide protection to native Texas corporations. . . .").

[46] *Friedrich Air Conditioning Co. ex rel. FAC Mgmt., LLC v. Genie Air Conditioning & Heating, Inc.*, No. SA-08-CA-541-XR, 2008 WL 3852644, at *4 (W.D. Tex. Aug. 15, 2008).

[47] R. Doc. 8 at ¶ II; R. Doc. 13-5 at 19. The parties do not dispute this. *See* R. Doc. 15 at ¶ 1; R. Doc. 16-2 at ¶ A.1.

[48] R. Doc. 13-5 at 19–20. The parties do not dispute this. *See* R. Doc. 15 at ¶ 5; R. Doc. 16-2 at ¶ A.5.

[49] R. Doc. 13-5 at 20.

[50] R. Doc. 1-1 at ¶ 1.

[51] R. Doc. 16-1 at 6–25.

[52] R. Doc. 13-5 at 20.

[53] *See, e.g.,* R. Doc. 13-5 at 10–11, 17–18, 22.

[54] R. Doc. 13-5 at 9, 21.

[55] *See* R. Doc. 16-1 at 27; R. Doc. 13-5 at 19.

[56] R. Doc. 13-5 at 19; R. Doc. 15 at ¶ 4; R. Doc. 16-2 at ¶ A.4.

[57] La. Civ. Code art. 3515.

corporation with its principal place of business in Texas, it has a justified expectation that Texas law would apply to its employment contracts. Subjecting it to the laws of the states in which each employee resides could result in varying interpretations and applications of the same employment contract and yield inconsistent results in matters involving common issues against SEISCO. Hudson traveled to Texas for meetings on several occasions[58] and, as a national sales manager, traveled out of state "extensively."[59] The purpose of Hudson's employment agreement with SEISCO was to facilitate the Texas corporation's sales.[60] Further, Hudson filed for and received unemployment benefits from the Texas Department of Labor after his employment with SEISCO was terminated,[61] suggesting he had at least some expectation that Texas law was applicable to his employment.

The parties dispute when and where the employment contract was negotiated, formed, and executed.[62] Hudson argues that although he met with SEISCO's chief executive officer David Seitz in Texas in the summer of 2010, he did not accept employment at that meeting.[63] Hudson testified that he met with Seitz in San Antonio in 2010 to discuss a "job opportunity" but does not recall discussing the capacity or salary of the job.[64] Hudson acknowledged that the meeting was "[v]ery vague and very general."[65] He testified that on October 20, 2010, he signed a draft employment agreement that was

---

[58] *See, e.g.,* R. Doc. 13-5 at 10–11, 17–18, 22.

[59] R. Doc. 13-5 at 9, 21.

[60] *See* R. Doc. 13-5 at 22–23; LA. CIV. CODE art. 3537 (naming "the location of the object of the contract" a relevant factor in the choice-of-law determination).

[61] R. Doc. 13-5 at 12. The parties do not dispute this. *See* R. Doc. 15 at ¶ 7; R. Doc. 16-2 at ¶ A.7.

[62] *See* LA. CIV. CODE art. 3537; *Tolliver*, 2002 WL 272377, at *4 (finding relevant the state in which the contract at issue was "negotiated, formed, and performed").

[63] R. Doc. 16-2 at ¶ B.1; R. Doc. 16-1 at 63.

[64] R. Doc. 16-1 at 63.

[65] *Id.*

emailed to him and he returned it by mail to SEISCO.[66] There is no evidence as to where Hudson was when he signed the contract. SEISCO, however, argues that Hudson "agreed to employment by SEISCO at a meeting in Houston," citing Hudson's deposition in which he testified he and Seitz "discussed and agreed upon a contract document" on September 3, 2013, in Houston, Texas.[67] Because it is unclear where the negotiations and formation of the contract took place, this factor may be considered but is not determinative.

In light of foregoing considerations—including that SEISCO is a Texas corporation with its principal place of business in Texas, that SEISCO has no operations in Louisiana, that at least some negotiations took place in Texas, that Hudson applied for unemployment in Texas, the expectations of both parties, and the potential problems that would arise for a corporation if its employment contract were interpreted by the laws of different states—the Court finds that Texas has a greater interest in the issues raised in this case and Texas's policies would be more seriously impaired if its law were not applied to this matter.[68]

## CONCLUSION

For the foregoing reasons;

**IT IS ORDERED** that SEISCO's motion for partial summary judgment is **GRANTED**. Texas law shall apply to this matter.

---

[66] R. Doc. 13-5 at 15–16.

[67] R. Doc. 13-5 at 2.

[68] *See* LA. CIV. CODE art. 3515; *Muirfield*, 17 F. Supp. 2d at 606 (considering the interests of each potentially interested state, including their interest in performance of the contract and the citizenship of the relevant parties to determine which state's substantive law should apply); *Petticrew*, 53 F. Supp. 2d at 867 (noting these factors as relevant to the choice-of-law determination); *Tolliver*, 2002 WL 272377, at *4.

**IT IS FURTHER ORDERED** that Hudson be given until **November 30, 2015**, to file an amended complaint to assert his claims under applicable Texas law.[69]

**New Orleans, Louisiana, this 4th day of November, 2015.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[69] *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); *Vargas v. Kiewit Louisiana Co.*, No. H-09-2521, 2012 WL 1029517, at *7 (S.D. Tex. Mar. 26, 2012) (finding that Louisiana, not Texas, law applied to a dispute and granting Plaintiffs leave to amend their complaint to assert their claims under the applicable Louisiana statutory provisions); *SortiumUSA, LLC v. Hunger*, No. 3:11-CV-1656-M, 2014 WL 1080765, at *1 (N.D. Tex. Mar. 18, 2014) (quoting an order in which the court granted plaintiff leave to amend "[b]ecause the Court has decided Georgia law applies to Plaintiff's claims").